## APPEAL OF SELLERS HOFFMAN.

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO 1 OF PHILADELPHIA COUNTY.

Argued January 12, 1888—Decided January 23, 1888.

1. A railroad company entered upon land for the construction of its roadway and filed a bond which was approved by the court. Pending an appeal by the landowner from the report of viewers assessing damages, the property and franchises of the company were sold under proceedings instituted by the trustee for the bondholders. On distribution of the fund realized: *Held*,

That the land-damage claimant was not entitled to claim payment out of the fund, but was confined to his remedy upon the bond, in connection with the statutory provisions for the assessment and collection of damages: Fries v. South. Penn. R. & M. Co., 85 Pa. 73, followed.

Before PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; GORDON, C. J., and TRUNKEY, J., absent.

No. 6 July Term 1887, Sup. Ct.; court below, No. 454 September Term 1884, C. P. No. 1.

The proceeding below was in the distribution before an auditor of the fund realized from the sale of the property and franchises of the Philadelphia and Chester County Railroad Company.

The Philadelphia, Delaware and Chester Central Railroad Company was incorporated originally by the act of March 17, 1871, P. L. (1872) 1269, with a capital of $500,000 and the right to build a railroad from Philadelphia to connect with the Pennsylvania Railroad, east of Downingtown station. By the supplementary act of April 9, 1872, P. L. (1873) 1084, the name of the road was changed to the Philadelphia and Chester County Railroad Company.

On April 1, 1879, the company executed a mortgage for $500,000 to the Guarantee Trust and Safe Deposit Company of Philadelphia, to secure a like amount in bonds bearing seven per cent. interest, and on April 4, 1881, entered into a contract with one George F. Work, to build the road. On July 1, 1881, a second mortgage for $750,000 was executed to the said trust company to secure a second series of bonds to that amount, at six per cent. interest, with which to retire the former ones. The work of building the road was abandoned in June, 1883.

On September 20, 1884, the Guarantee Trust and Safe Deposit Company, at the request of bondholders, filed a bill in equity to No. 454 September Term 1884, C. P. No. 1, to obtain a decree for the sale of the mortgaged property and franchises, by reason of a default in the payment of interest; thereupon such proceedings were had that the following decree was entered:

And now, to wit, February 14, 1885, this cause came on to be heard on bill and answer, and counsel appearing as well for the defendant as the plaintiff, and therefore, upon consideration thereof, the court doth now adjudge and decree: That default has been made by the defendants in the payment of the interest on the bonds numbered and specified in paragraph 8, of said bill, for more than a year after demand thereof made; that holders of the said bonds, to the amount of sixty per cen-

Statement of Facts.

tum of the aggregate thereof, have made request, in writing, upon the said plaintiff, to proceed and execute the power of sale in the mortgage, set forth in paragraph 7, of said bill. That there has also been default made by the said corporation defendant, in the payment of interest on the bonds secured by the mortgage, set forth in the 10th paragraph of said bill, and that request, in writing, on the plaintiff, has been made by the holders of the said bonds of an amount admitted by the answer of said corporation defendant sufficient to comply with the requirements of said mortgage given to secure said bonds, also, to proceed and execute the power of sale contained in said last mentioned mortgage.

And it is further ordered, adjudged and decreed, that the said Guarantee Trust and Safe Deposit Company do comply with said request and proceed to make sale of said mortgage premises under the powers of sale contained in each and both of said mortgages; and do expose the same to sale in the city of Philadelphia at such time and place, and by such hands as said plaintiff may select; and that at least four weeks' notice of said intended sale be previously given at least once in each week in at least two daily newspapers published in each of the cities of Philadelphia and New York; and, also, in one newspaper for the same period published in the counties of Delaware and Chester, and that $2,000 on account of the purchase money, be paid at the time of said sale, and that said advertisement do so state, and that said plaintiff do make return of such sale to this court for its further order and direction thereon.

And it is further ordered, adjudged and decreed, that this decree and sale so as aforesaid ordered, shall in no way or manner affect, alter, change, enlarge or impair, the rights of the holders of any of said bonds, but that said rights shall be and remain upon the fund produced by said sale of the same character, to the same extent, and to the same amount as they exist now upon said mortgaged property.

In pursuance of said decree, the trustee named therein, on April 3, 1885, made return that it had executed the said order of sale, and that said road had been sold for $40,000, which said return was duly confirmed. The account of the trustee,

filed and on September 19, 1885, confirmed, showed a balance of $36,661.25 for distribution.

On October 27, 1879, the railroad company had filed its petition to No. 391 September Term 1879, C. P. No. 3, setting out the location of their road with two tracks through the lands of Sellers Hoffman, situate in the 27th ward of Philadelphia, and containing $3\frac{49}{100}$ acres, praying for the appointment of viewers, etc. The viewers on May 26, 1880, filed a report awarding Hoffman $5,351.50, damages, and on May 28, 1880, the bond of the company to the landowner was filed and approved by the court. On June 12, 1880, Hoffman appealed from the award of the viewers. A rule to have an issue framed was taken on October 17, 1883, and made absolute on October 20, 1883, which issue was pending during the proceedings for distribution referred to.

Before the auditor, *Mr. A. A. Hirst*, appointed to distribute said balance, Mr Hoffman presented his claim upon the fund for his land damages, coupled with a motion that the distribution should be suspended until his action against the company should be determined, contending :

1. That the bond filed by the company was inadequate, insufficient and insecure.

2. That the fund for distribution, being the proceeds of the sale of the road, under no circumstances could be awarded to the creditors of the company until the damages occasioned by the location and construction of the road were liquidated and settled. The auditor, however, ruled :

The question, however, appears to have been expressly passed upon by the Supreme Court, in Fries *v.* The South. Penn. R. and M. Co., 85 Pa. 73. It is there held, that the security being given in due course of law, the grasp of the owner upon his property is loosened by the constitution itself, and, consequently, the easement acquired passes freed from his power to obtain payment, otherwise than upon the bond and the proceeding by assessment of damages given by law.

The sureties upon the bond of the railroad company were duly approved according to law. Their approval by the court is final. It was intimated that the sureties were not now solvent. No evidence, however, was produced before your

auditor in proof of such assertion, and certainly would not have been relevant if offered.

The claim upon the fund by Sellers Hoffman is disallowed.

Mr. Hoffman excepted to the report of the auditor: 1. In his disallowance of his claim. 2. In his refusal to suspend the distribution. On March 18, 1887, the court, ALLISON, P. J., in an oral opinion, dismissed the exceptions and confirmed the report so far as relating to the claim of the exceptant. Thereupon Mr. Hoffman took this appeal with a writ of certiorari thereon, assigning the dismissal of his exceptions and said confirmation of the report as error.

*Mr. C. W. Talbot* and *Mr. Robt. E. Monaghan*, for appellant:

1. Section 4, article VII., of the constitutional amendments of 1838, provides that, "The legislature shall not invest any corporate body, or individual, with the privilege of taking private property for public use, without requiring such corporation or individual to make compensation to the owners of said property, or giving adequate security therefor, before such property shall be taken." The amendment was adopted to remedy the growing evil arising from the exercise of the power of eminent domain by private corporations and individuals who afterward became insolvent or unduly refused compensation: McClinton v. Railroad Co., 66 Pa. 408; Yost's Report, 17 Pa. 524.

2. The easement does not become the property of the company until it is paid for. A man cannot incumber what he does not own, neither can a railroad company mortgage what it has not paid for, and consequently does not own. The giving of the bond does not waive the owner's right to collect the damages; it is simply protection intended to give him an additional security and makes the entrance of a company lawful. Section 2, act of April 9, 1856, P. L. 288, contemplates the exhaustion of the road before proceeding on the bond. The character of the plaintiff's claim gives it priority of lien.

3. Is it intended by the decision in Fries v. South. Penn. R. & M. Co., 85 Pa. 73, to deny the landowner his rights to recover his damages from the railroad company, taking his land, and to confine his chances of recovery to the bond? Is the

giving of the bond to subjugate the landowner's claim to the mortgage creditors of the road? If so, it is contrary to the constitution under which the landowner is protected in his rights of property. Fries v. Railroad Co. is to be distinguished. It was attempted by the landowner to collect, not from the company taking the land, but from a purchaser of the road and franchises at the trustee's sale. The court held that the purchaser's title was clear. In the case at bar, the contest is between the landowner and the creditors of the company taking the land.

*Mr. G. L. Crawford*, for the appellee.

The paper books, not being served in the time required, on objection made were refused.

OPINION, MR. JUSTICE STERRETT:

This case is virtually ruled by Fries v. The South. Penn. R. & M. Co., 85 Pa. 73, in which it was held that the lawful exercise of the right of eminent domain rests not alone upon actual payment of just compensation to the owner of land taken for public use, but also upon the alternative of security given for the payment thereof; that whenever such security, in due form and approved by the court, is given, "the grasp of the owner upon his property is loosened by the constitution itself, and consequently the easement acquired passes freed from his power to obtain payment otherwise than upon the bond and the proceeding by assessment of damages given by the law."

That case arose under the amended constitution of 1838, the provisions of which, as to the subject under consideration, are essentially the same as the corresponding clauses of our present constitution. In article I., section 10, of the latter, it is ordained that private property shall not "be taken or applied to public use without authority of law and without just compensation being first paid or secured;" and article XVI., section 8, of same instrument, further provides that "municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

The privilege of taking private property for public use may, therefore, be constitutionally exercised by those invested therewith, in one of two ways, either by actual payment or by giving security for the payment of compensation to the owner of the property taken. For example, if a railroad company agrees with and pays the landowner for right of way, it thereby acquires a clear right to the easement. On the other hand, if the parties fail to agree, the same right may be acquired by complying with the other constitutional alternative, viz. : giving security for the payment of just compensation, in the manner prescribed by law. When the latter alternative is resorted to, and sufficient bond, with sureties approved by the court, has been given, the company acquires as clear and perfect right to the easement as if it had paid therefor in cash. The landowner's only remedy is upon the bond in connection with the statutory provision for assessment and collection of damages.

It is contended that the landowner retains his grasp upon the property until he has actually received compensation for the use to which it has been applied. The answer to this position is, while the people might have so provided in their fundamental law, they have not done so. On the contrary, they have ordained, as we have seen, that private property may be taken for public use upon giving security for the payment of just compensation to the owner; and the kind of security, as well as the manner in which it shall be given and enforced, has been prescribed by law. A right of way for railroad purposes is a mere easement, which under the law, is not the subject of lien: West. Penn. R. Co. v. Johnston, 59 Pa. 290; and hence upon the facts found by the learned auditor, appellant had no claim as a lien creditor or otherwise, upon the fund raised by the sale of the property and franchises of the railroad company.

Cases, in which compensation has neither been paid nor secured, rest on an entirely different principle. They are wholly outside the constitutional provisions above quoted, and hence no right has been acquired as against the landowner, except when long-continued and exclusive occupancy may have ripened into a right: West. Penn. R. Co. v. Johnston, 59 Pa. 290; McClinton v. Railroad Co., 63 Pa. 404. In these cases, the

rights and remedies of a landowner, to whom compensation has neither been paid nor secured, are very fully considered.

Decree affirmed, and appeal dismissed at costs of appellant.