# The Upper Ten Mile Plank Road Company *v.* William H. Braden, Appellant.

*Eminent domain—Turnpike companies—Waters—Title to spring within limits of right of way.*

The title to the water of a spring within the right of way of a turnpike company is in the owner of the fee, who has the right to use the whole of the water, to conduct it by pipe wherever he desires, to consume it, to sell it, or to waste it.

The turnpike company has no easement in the spring. It has a right of way for public travel over the land upon which the waters of the spring descend, and for the purpose of preserving its roadbed in a condition suitable for travel it may drain the water off; but the right is one of drainage of the roadbed only, and does not involve the right to appropriate, or take exclusive possession of the spring itself, or to exclude the owner therefrom.

Argued Oct. 23, 1895.    Appeal, No. 31, Oct. T., 1895, by defendant, from decree of C. P. Washington Co., No. 778, in equity.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Bill in equity for an injunction to prevent defendant from interfering with a spring within the limits of plaintiff's right of way.

The case was referred to DAVID STERRETT, Esq., as master, who reported that plaintiff was a corporation organized under the act of April 15, 1851, P. L., 690, and subject to the act of January 26, 1849, P. L. 10, entitled "An act regulating turnpike and plank road companies." The plaintiff constructed its road from Washington to the village of Prosperity in the years 1853 and 1854. The master further reported the following facts:

After the road was built and as early as 1869, a watering trough was put up on land now owned by W. W. Smith at north end of cut. A pipe was put in the drain and the water carried to the trough. The water was conducted part of the way in an open drain and the balance of the way in a pipe. Afterwards about the year 1883 the plaintiff made a contract with W. W. Smith, in pursuance of which he extended the pipe to the spring and conducted all the water from the spring. There was a tight reservoir made at the spring and covered over so as to exclude the surface water and carry all the spring water out of the cut. This the witnesses say was a good arrangement. It was a decided improvement in draining the road and keeping down the accumulation of ice in the winter season. The reservoir and pipe was within the appropriation and the pipe was in the bottom of the drain. The purpose of the company was to drain the road. The spring water was taken through the pipe and the drip from the rocks was carried off in the drain. The watering trough was continued and supplied with water. There was no watering trough for six miles beyond and it was an accommodation to the traveling public. The first watering trough was provided for by contributions from persons residing in the neighborhood but has been maintained under direction and control of the plaintiff.

About the 12th of October, 1892, the defendant commenced

to interfere with the reservoir and pipes which conveyed the water from the spring to the watering trough. He took a hatchet and broke the top off the basin that was used to conduct the spring water into the pipe. He was in control of the property of the heirs of Robert Boyd, deceased. He says his plan was to make a trough at the spring. He proposed to cut the rock back four feet and rest the trough on the rock and let all the water run into the trough. He says he claimed the water for the benefit of the land. He denied the right of the company to the water. He went there frequently and threatened to carry out his plan by using dynamite to blast away the rock and make a place for a watering trough at the spring, alleging that the water belonged to him and he could do what he pleased with it. The evidence shows that he acted under a claim of right and not from malice or illwill.

The damage done to the highway by the defendant was but trifling and compensation for the injury already done to the plaintiff's method of draining the cut is sufficiently made by the payment of a nominal sum.

At a point about half a mile from Washington in crossing the summit of the hill a deep cut was made in constructing the road. It is about three hundred feet long, and in the middle or deepest part of the cut the walls on each side are about fifteen feet high. The cut is fourteen to sixteen feet in width in narrowest part. The line of the road at this place was surveyed and located and is now in its original location. When the cut was made it was found to be in a stratum of limestone, and under that a blue sandstone was found. For a good part of the way through the cut the roadbed was solid rock. The walls at the sides have been changed somewhat by detrition but in the deeper part they are still nearly perpendicular. There is a rising grade through the cut to the southward, so that all drainage must be to the north or Washington end. At the time the cut was made the land belonged to James G. Strean. It subsequently became vested by conveyances in Robert Boyd, now deceased, and it is now the property of his heirs at law.

At the time the road was made a spring of water was opened in the rock at west side of road in the deep cut and about equidistant from each end of the cut. The water came out at western side of cut close to the drain. It was a good living

spring of water. It was necessary to drain it to north end of cut. The surface of the land of the heirs of Robert Boyd upon which the spring is situate is higher than the road at north end of the cut. The spring cannot be conducted by natural drainage out of the cut to the land of Robert Boyd's heirs off the line of plaintiff's easement. The land on the east side of the cut is the property of the Washington Cemetery Co. The land at the northern end of the cut upon which the watering trough is located is the property of W. W. Smith, but the watering trough is within the lines of the plaintiff's appropriation and at the roadside. In addition to the water from the spring, water drips from crevices in the rocks, for the most part between the spring and the north end of the cut and from the walls on the west side of the cut. It was difficult to provide drains. The plaintiff had to cut drains in solid rock. Could not make drainage without blasting. Owing to the draft of air through the cut it was a very cold place in the winter season. The open drain would freeze full of ice, and the spring water from above would run across the road and freeze, making road sideling and interfere with maintaining the road in safe condition for travel. It sometimes made the road very dangerous, causing vehicles to slide against the opposite bank.

The master recommended the granting of an injunction as prayed for by the bill.

Exceptions to the master's report were overruled in an opinion by McILVAINE, P. J., and a decree entered enjoining defendant from interfering with the spring.

*Error assigned*, amongst others, was above decree.

*Albert S. Sprowls*, for appellant.—The spring is part of the real estate on which it is situated: Pittsburg R. R. v. Com., 104 Pa. 583; 1 Daniel's Ch. Pr. 262.

The act incorporating the plaintiff vested in it no estate in the soil, but merely a right of way over the land of the heirs of Robert Boyd, deceased: Fisher v. Coyle, 3 Watts, 407; Pittsburg Ry. v. Bruce, 102 Pa. 23.

It appearing from the testimony and the bill itself that plaintiff had no title to said spring, it will not be afforded relief, if

it has suffered no injury, by way of injunction : High on In-
junctions, vol. 1, sec. 9.

To entitle itself to the remedy which it seeks in this case,
the plaintiff must not only show that it has a clear right, but
also that it has suffered an irreparable injury : Kennedy v. Bur-
gin, 1 Phila. 441 ; Loughery v. McIlvaine, 8 Phila. 278 ;
Clark's App., 62 Pa. 447 ; Minnig's App., 82 Pa. 373 ; Suffield
v. Hathaway, 26 Am. Rep. 483 ; 2 High on Injunctions, 914,
915.

*N. E. Clark, W. I. Berryman* and *R. W. Irwin* with him for
appellee.—In this case every material averment in the bill has
been found to be true by the master and his finding has been
approved by the court below, and this being the case such find-
ing will not be set aside except for plain error : Logue's App.,
104 Pa. 136 ; Thompson's App., 103 Pa. 603 ; Burton's App.,
93 Pa. 214 ; Kisor's App., 62 Pa. 428.

The rights of the appellant being incompatible with our
rights in the use of the spring, must give way to them : Wash-
burn on Easements, 252 ; Suffield v. Hathaway, 44 Conn. 521.

To warrant the interference of equity in restraint of trespass,
two conditions must co-exist : First, complainant's title must
be established ; and second, the injury complained of must be
irreparable in its nature. And to come within the rule the
injury must be of such a nature as not to be susceptible of ade-
quate pecuniary compensation in damage. Nor will equity in-
terfere to restrain a trespasser simply because he is a trespasser,
but only because the injury threatened is ruinous to the prop-
erty in the manner in which it has been enjoyed and will per-
manently impair its future enjoyment: High on Injunctions,
sec. 701 ; Bispham on Equity, sec. 435 ; Adams' Equity, sec.
210 ; Hacke's App., 101 Pa. 245 ; Stewart & Foltz's App., 56
Pa. 413 ; Scheetz's App., 35 Pa. 88.

Equity has jurisdiction to prevent a multiplicity of suits :
Pomeroy's Equity Jur. sec. 252 ; Biting's App., 105 Pa. 517 ;
High on Injunctions, secs. 702, 908, 912, 915.

Moreover the acts of the appellant here amount to a nuisance,
and upon this ground equity has jurisdiction : High on Injunc-
tions, sec. 912 ; Bispham's Equity, sec. 436.

OPINION BY MR. JUSTICE WILLIAMS, January 6, 1896 :

The report of the learned master deals in an able and logical manner with the questions of fact and law involved in this case. The conclusions reached have however, as it seems to us, been influenced by an inaccurate definition of the respective rights of the owner of the soil and the owner of the easement of way over it. The findings of fact show that the plaintiff corporation is the owner of a wagon road the right of way for which was obtained by the exercise of the right of eminent domain. This road passes over a part of a farm known as the Boyd Farm. In grading the road over this farm it became necessary to make a cut, the banks on the upper side of which were some ten or twelve feet high. In making this cut a fine vein or spring of water was opened which gushed out of the rocks some three or four feet above the roadway. For some years the water was used to supply a watering trough placed below the spring, and the surplus water was conducted away by means of a ditch on the upper side of the roadway. More recently the corporation has removed this trough several hundred feet to the land of another farm owner, has inclosed the spring in solid masonry made watertight overhead as well as on the sides, and conducted all the water away and off the defendant's land by means of iron pipes, delivering a small portion of it into the new trough and making some other disposition of the rest of it. The defendant went in search of his spring and opened a hole into the cistern so that he could see what was being done with the water. He also insisted that he had a right to use the water for his cattle and expressed his purpose to blast away the rocks at that point and prepare a permanent and convenient place for the establishment of a watering trough for his own use and the use of the public. To prevent him from opening the watertight cistern built about his spring and to compel him to pay for repairing the damage done to it in his effort to find out what was being done with the water, this bill was filed and the case went to a master to hear the evidence and to make appropriate findings of fact and law under the old practice. The master held upon these facts that the spring belonged to the owner of the soil on which it was, but in his third conclusion of law held that " the title of the owner is so qualified by plaintiff's easement that the spring can only be enjoyed sub-

ject to the easement." This was a mistake, and it gave direction to all that followed. The plaintiff's easement qualified the manner in which the defendant might use his spring but it did not qualify his title. The title was as absolute and unqualified to the water as to the rocks out of which it issued, and the defendant had the right to take it where he pleased and use it as he pleased, Mills on Eminent Domain, p. 70. He had no right to use it in such a manner as to inflict injury on the plaintiff's road bed but he had the right to use the whole of it, to conduct it by pipes wherever he desired, to consume it, to sell it, or waste it.

The plaintiff has no easement in the spring. It has a right of way for public travel over the land upon which the waters of this spring descended; and for the purpose of preserving its road bed in a condition suitable for travel it may drain the water off. The right is one of drainage of the road bed only. It is not a right to appropriate, or to take exclusive possession of, the spring itself, or to exclude the owner therefrom: Mills on Eminent Domain, p. 71. The corporation had gone much farther in this case. It had taken exclusive possession of the spring. It had taken upon itself for some purpose the responsibility of preserving the absolute purity of the water so that it could be delivered on the land of another person without contamination from surface water. For this purpose it had literally sealed it up in a watertight reservoir into which iron pipes were introduced by means of which the spring was transported off the land of the owner and set down some hundreds of feet away upon the land of another person. Because the owner was curious to know what was being done with his spring and had opened a hole into the reservoir that he might learn the situation, this bill was filed and a chancellor appealed to in order to restrain his curiosity by injunction, and to punish him for his temerity in seeking to know what the corporation was doing with his spring. An injunction has been decreed and damages have been assessed in accordance with the prayer of the bill. This result is due to the mistaken definition of the rights of the parties found in the third conclusion of law to which we have referred. The master and the court below have proceeded on the theory that the title of the defendant has been qualified and restricted by the easement of passage over the

roadway so that as between him and the corporation, he has no right to the use of the spring if the corporation finds it convenient for the purposes of drainage to take exclusive possession of it and transport it to any point where it may wish to use it off the land of the owner.  The true rule is that the easement qualifies not the title to the spring but the manner of its use.  The corporation has a roadway at the side of which the defendant has a spring.  Each must so use his own as to inflict no unnecessary injury on the other, but neither can forcibly exclude the other from what is his own.  It was neither against law nor against equity for the defendant to seek access to his spring, and although this may not have been done in a peaceable spirit it was nevertheless in the exercise of a clear legal right.  The corporation may drain its road, but it cannot in the exercise of the right of drainage take forcible possession of this spring, exclude the owner from access to it, and transport it for its own use or for the use of any other person off the owner's land.  The right of drainage does not include the right of appropriation, nor does it justify the forcible exclusion of the owner from access to a spring of water that comes to the surface on his own land outside the beaten track of the roadway.  Subject however to the owner's right of access, the method of drainage to be adopted is for the corporation to determine.

The decree appealed from is reversed, the injunction is dissolved and the bill dismissed at the costs of the plaintiff.