# Dilts *v.* Plumville Railroad Company, Appellant.

*Railroads—Eminent domain—Location of route.*

By the location of the route of a railroad on the ground by its engineers and its adoption by the company, the title to the route, as against rival corporations, passes to the company which has made the location.

*Railroads—Eminent domain—Appropriation of land—Bond—Title to right of way.*

When the damages due the landowner have been paid or when a bond to secure the damages has been given and accepted by the owner or approved by the common pleas, the title to the right of way passes to the corporation.

After the bond has been given, the grasp of the owner is released from the property, and he is remitted to the bond for the damages which he may sustain. The right of way passes to a subsequent purchaser or mortgagee unincumbered by any claim for damages.

*Railroads—Eminent domain—Condemnation proceedings—Title acquired by railroad.*

The interest which a railroad company acquires in real estate by the right of eminent domain is not a fee, nor is it an easement in the proper sense of that word; it is in substance an interest in the land special and exclusive in its nature.

*Railroads—Eminent domain—Appropriation of land—Abandonment of part of appropriation.*

Where a railroad company under the right of eminent domain enters for the purpose of appropriating land for its right of way, fixes the width of its appropriation, which is approved and adopted by its board of directors, gives a bond to secure the damages resulting from such appropriation, and actually occupies and constructs its road on the land, the railroad company cannot thereafter refuse to take any part of the right of way so as to defeat the owner's right to damages for the width originally fixed by the company.

*Railroads—Eminent domain—Appropriation of land—Spring of water.*

A railroad company does not by condemning land secure title to the waters of a spring within the limits of the right of way, nor can it sell the water or use it for any purpose whatever. It has, however, the right to use the ground from which the water issues and place thereon its tracks and any structure necessary in the operation of the road; and if in doing so it interferes with the owner's manner of using the spring, the·latter is entitled to compensation to the extent that the use of the

spring is interfered with.    If the spring is destroyed, the landowner is entitled to compensation for the value of it.

*Railroads—Eminent domain—Surface support of right of way—Underlying minerals—Damages—Evidence.*

In condemnation proceedings, a railroad company in the exercise of its right of eminent domain secures not only the surface of the land, but also so much of the underlying minerals as may be necessary to support the surface. The company's entry upon the land is an appropriation of the subjacent strata of coal or other minerals so far as necessary to support the surface for any purpose to which it may be put for railroad uses.

Where an owner of land has conveyed away the coal under the land and released his right to the support of the surface, and a railroad company subsequently condemns a right of way across the land, both the surface and coal owner are entitled to compensation for the injuries sustained by the appropriation of the right of way. It, therefore, follows that a witness for the surface owner in proceedings to assess damages must know and take into consideration the fact that the ownership of the coal and mining rights is in another person than the owner when he expresses an opinion as to the amount of damages which the surface owner is entitled to receive.

The fact that a witness in condemnation proceedings would not wish to own a farm after the railroad company's appropriation of a right of way across it, is immaterial as affecting the damages.

Argued Oct. 12, 1908.  Appeal, No. 205, Oct. T., 1908, by defendant, from judgment of C. P. Indiana Co., Sept. T., 1907, No. 208, on verdict for plaintiff in case of Mary J. Dilts v. Plumville Railroad Company.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Appeal from award of viewers.  Before TELFORD, P. J.

At the trial plaintiff was asked this question:

"Q. State how much the damage was since the railroad company appropriated your land to itself?

Objected to as incompetent.

The Court: Objection overruled, exception noted to defendant, and bill sealed. [4]

"A. $3,000."

St. Clair Thompson was asked these questions:

"Q. Will you state now what the market value of the land was after the railroad appropriated it to itself?"

\*     \*     \*     \*     \*     \*     \*     \*

"Q. What do you say?   A. I would not want the farm at all."

Mr. Channell: We ask to have that stricken from the record.

The Court: The motion to strike out the answer is refused, an exception is given to defendant and bill sealed. [5]

Peter Spencer, a witness for plaintiff, was questioned as follows:

"Q. Will you state what the market value of that land of Mrs. Dilts was without the coal, before the railroad company interfered with it at all."

Objected to until they have allowed us to cross-examine the witness.

Cross-examined by Mr. Channell: "Q. Mr. Spencer, do you know anything about the extent of the mining rights which Mrs. Dilts gave in connection with the sale of her coal?   A. Nothing at all."

Counsel for defendant objects to this witness testifying as to the value of this land for the reason that he has not yet made himself acquainted with the extent of the rights which Mrs. Dilts has in the land claimed to be affected.

The Court: Objection overruled, exception given to defendant and bill sealed. [6]

Question read:

"A. I would consider it was worth $28.00 an acre.   Q. What would be its market value after the railroad company had constructed its road there?   A. I wouldn't consider it worth more than $12.00 an acre."

Silas McManus, a witness for the plaintiff, was asked this question:

"Q. Will you state the market value of Mrs. Dilts's farm without the coal, at the time that the railroad company appropriated a portion of it to its own use for the construction of the road?

\*     \*     ·     \*     \*     \*     \*     \*

"Q. Are you acquainted with the extent of the rights which

Mrs. Dilts reserved in this farm at the time she sold the coal away? A. No, sir."

This is objected to as being irrelevant; also for the reason it appears from his evidence that he has not been made acquainted with the extent of the rights which Mrs. Dilts had in the land, and which could be affected by the construction of defendant's road, upon it at the time it was taken.

The Court: Objection overruled, exception given to defendant and bill sealed. [7]

Question read:

Mr. Blair: "Q. What is your answer? A. $50.00 an acre."

Alexander Hamilton, a witness for the defendant, was asked this question:

"Q. What was the market value of the surface to the Mary J. Dilts farm after the Plumville railroad went through it, taking into consideration the advantages and disadvantages occasioned by said construction and operation of said railroad; also taking into consideration that the title to the water in the spring within the right of way of Plumville Railroad Company is in Mary J. Dilts, she having the right to use the whole of the water, the right to conduct it by pipe wherever she desires, the right to consume it, to sell it, or waste it, and having said water piped to her house and barn, and defendant company having no right to use said water?"

Mr. Blair: Objected to, first, because the witness has already spoken on the subject of damages, and second, because the question is long and confusing and based in part as something that cannot be sustained, in regard to which there is no sufficient evidence.

The Court: Objection sustained, exception given to defendant and bill sealed. [8]

Counsel for defendant offered to file a renunciation dated April 18, 1908, which renunciation is signed by all the attorneys of record.

Counsel for plaintiff ask the defendant as to what effect they expect such an offer as this to have upon the present status of the case; the spring having been appropriated between two and three years ago, and in the meantime greatly

damaged, it being impossible for the defendant to restore it to the use of Mrs. Dilts and her family in such condition as it was before the railroad company took it, being in a damaged condition ever since it did take it, and the statements about some former offer being of a loose description and the defendant having had no opportunity during the last two years and more to make some proposition if it wished to, that would be authentic and official, and not leave the subject open to further doubt and further litigation.

We object to the filing of the paper as well as the paper itself if it is to be received in evidence.

The Court: As we understand it, the plaintiff declined to accept the renunciation of the portion of the right of way embraced in this paper.

Mr. Blair: There has been no renunciation offered and nothing that is official or binding upon the company.

The Court: It appears that this paper proffered to be filed; affecting one element of damage claimed by the plaintiff; if it had been offered at an earlier stage of the case, before the plaintiff had closed, so as to have given an opportunity to meet the question as it would present itself, we might have permitted of its filing, but now the plaintiff has closed and we decline to accept the renunciation proffered in the paper of a portion of the right of way, at this stage of the proceeding; we will therefore sustain the objection to it, and give an exception to the defendant and seal a bill. [9]

Hamilton was asked this question:

"Q. What was the market value of the surface to the Mary J. Dilts farm, after the Plumville Railroad Company went through it considering the title to the water in the spring belongs to Mrs. Dilts?"

*    *    *    *    *    *    *    *

Objected to because under the law and evidence in the case it could not be considered as belonging to Mrs. Dilts. Because the subject-matter has been inquired of already of this witness.

The Court: Objection sustained, exception given to defendant and bill sealed. [10]

"Q. Mr. Hamilton, what was the market value of the sur-

face of the Mary J. Dilts farm before the Plumville railroad
went through it, said surface being subject to the mining rights
conveyed by Mary J. Dilts to the Plum Creek Coal Company,
by deed dated July 3, 1905, and which you have just heard read
to the jury a few moments ago; in which deed she waives the
right to surface support, waives the right to damages to land,
or structures thereon, damage to spring or water courses
therein or thereon, giving the coal company the right to make,
maintain and use roads, trolley lines and drains upon or under
the surface of said lands, and to locate such buildings and other
structures necessary for the mining or operation of said coal?"

Objected to, because it is long and apt to mislead the wit-
ness, and embraces a variety of subjects calculated to confuse
him and interfere with an intelligent answer.

The Court: Objection sustained, exception given to defend-
ant and bill sealed. [11]

C. P. Muntch, a witness for the defendant, was asked this
question:

"Q. Were you in court this morning when the deed was read
by which Mrs. Dilts conveyed the coal and certain mining rights
in her land to the Plum Creek Coal Company? A. I was pres-
ent, yes, sir. Q. Considering the effects of that inconvenience
upon her farm, and considering your knowledge of values in
that vicinity, prior to the time when the defendant entered
upon her farm for the purpose of constructing its road, what, in
your judgment, was the market value of the surface and rights
which Mrs. Dilts had reserved, when she made that sale before
the construction of the road, how much per acre?"

Objected to. We have no objections to them asking the
witness what the value of Mrs. Dilts's farm was without the
coal, but to mix the question up with reservations, rights or
rights alleged to be reserved as mining rights, is calculated to
confuse and prevent a reaching of the real truth of the case.
These mining rights would be or may be the matter of con-
struction for courts. The witness would not be able to put a
proper construction upon them.

The Court: Objection sustained, exception to defendant and
bill sealed. [12]

Plaintiff presented this point:

[4. There was a spring on plaintiff's premises. The railroad company could take the bed of the spring and its water if it chose to do so, under powers conferred upon it by the legislature. In the present case it saw fit to appropriate the spring to itself, and having included it within the lines of its survey and appropriation, it became the owner of it, and owned it in the same sense that it owned any other portion of its roadway. It could not do this, however, without rendering to the plaintiff just and full compensation for this loss. This point is affirmed.] [3]

Defendant presented these points:

9. The title to the water of a spring within the right of way of the Plumville Railroad Company on the farm of Mary J. Dilts is in Mary J. Dilts, who has the right to use the whole of the water, to conduct it by pipes wherever she desires, to consume it, to sell it, or to waste it. *Answer:* This point is refused. [1]

10. The Plumville Railroad Company has no title to the water in the spring within its right of way on the Mary J. Dilts farm, nor has it an easement in the same, and has no right to appropriate or take exclusive possession of the spring itself, or to exclude the owner therefrom. *Answer:* This point is refused. [2]

Verdict and judgment for plaintiff for $1,860. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them; (4–9) rulings on evidence, quoting the bill of exceptions.

*S. F. Channell* and *M. C. Watson*, with them *W. F. Elkin, F. E. Watrous, H. F. Marsh* and *J. N. Langham*, for appellant.—We think this case is ruled by the case of the Plank Road Company v. Branden, 172 Pa. 460. See also Hasson v. R. R. Co., 8 Phila. 556.

As we understand the law, before the company could consume this water for the use of its engines it would have to institute condemnation proceedings for that purpose. That the

present rights to the water are no more than that of the riparian owner, in which case it could use but a very limited quantity and could not deprive the plaintiff of the water necessary for her domestic use: The Pennsylvania Railroad Company v. Miller, 112 Pa. 34; Kansas Cent. Ry. Co. v. Allen, 22 Kansas, 285; Beacon v. R. R. Co., 1 Pa. Dist. Rep. 618.

*John P. Blair*, with him *David Blair*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:

This is a condemnation proceeding, instituted July 26, 1907, by the plaintiff for the purpose of having determined the damages which she has sustained by reason of the location and construction of the defendant company's road through her lands in Indiana county. She owns a farm containing sixty-two acres on which are two dwellings houses, one large barn and other outbuildings. The right of way of the defendant's road through her premises is a strip of land sixty-six feet in width and ninety-six rods in lengths, and contains two and four-tenths acres. In the summer of 1905, the defendant company located its road over the plaintiff's premises, and the parties failing to agree on the damages due her, the company tendered and the plaintiff accepted a bond. The defendant took possession and commenced the construction of its road on the land on July 18, 1905. Prior to the appropriation of the right of way, as we infer, the plaintiff and her husband, by deed dated July 3, 1905, conveyed to the Plumville Coal Company all the coal in and under her farm, "except two acres underlying the buildings and spring appurtenant thereto," together with full mining rights authorizing the vendee to mine and remove all the coal without liability for any injury done thereby to the overlying surface or any structures thereon, together also with certain surface privileges reasonably necessary to drain or ventilate the mine, and with the right to make and maintain trolley lines and drains upon or under the surface and to erect on the surface the necessary structures to mine the coal. Viewers were appointed by the court and having made their report, the defendant company appealed to the common pleas. The case

was tried in that court last April and resulted in a verdict and judgment for the plaintiff. The defendant has appealed.

The route adopted by a railroad company is in the discretion of the president and board of directors with the exceptions noted in the statute. The location of the route on the ground is made by the engineers of the company, and becomes complete when it has been adopted by the company. The title to the route, as against rival corporations, then passes to the company which has made the location. When this action of the company has been followed by the payment of the damages due the landowner, or when a bond to secure the damages has been given and accepted by the owner or has been approved by the common pleas, the title to the right of way passes to the corporation: Fries v. Southern Pennsylvania Railroad, etc., Company, 85 Pa. 73; Hoffman's Appeal, 118 Pa. 512; Johnston v. Callery, 173 Pa. 129. In the Fries case it is said (p. 74): "But here the railroad company gave the required bond and entered lawfully. The easement of the company was therefore lawfully acquired, and passed to the purchaser under the mortgage unincumbered by any lien, except the judgment upon the report of viewers, which, however, was obtained after the mortgage had been recorded. As the consequence of these proceedings, the purchaser took a clear title and the landowner was thrown back upon his bond." In the Johnston case, it is said (p. 137): "It (the selection and adoption of a line for the proposed road) fastens a servitude upon the property affected thereby, and so takes from the owner and appropriates to the use of the corporation. It gives to the latter a standing to settle with and make compensation to the owner for the property thus taken and appropriated to its own use, and,—in case they cannot agree,—to give adequate security for the payment of damages when legally ascertained. Until such compensation is made, or in lieu thereof, approved security is given, the title to the owner is not divested. As against him, the corporation, by its act of location, can acquire only a conditional title which ripens into an absolute one upon making compensation." After the bond has been given, the grasp of the owner is released from the property, and he is remitted to the bond for the damages

which he may sustain by reason of the location and construction of the road through his premises. The right of way passes to a subsequent purchaser or mortgagee unincumbered by any claim for damages. In Hoffman's Appeal, 118 Pa. 512, pending an appeal by the landowner from the report of viewers assessing damages, the company's property and franchises were sold under proceedings instituted on a mortgage of the company's road by the trustee for the bondholders, and on distribution of the fund realized on the sale, the owner of the land was denied the right to recover his damages. It was held that he was confined to his remedy upon the bond. In that case STERRETT, J., delivering the opinion, says (p. 518): "When a sufficient bond with sureties approved by the court, had been given, the company acquires as clear and perfect right to the easement as if it had paid therefor in cash. The landowner's only remedy is upon the bond in connection with the statutory provision for assessment and collection of damages." This case is followed in Fischer v. Catawissa Railroad Company, 175 Pa. 554.

The interest which a railroad company acquires in real estate by the right of eminent domain is well settled in this state. It is not a fee nor is it an easement in the proper sense of that word. Our cases have frequently defined it and among them is the Pennsylvania Schuylkill Valley R. R. Co. v. Reading Paper Mills, 149 Pa. 18, which has been frequently approved and followed. In that case, the present chief justice delivering the opinion says (p. 20): "Such title is sometimes called an easement, but it is a right to exclusive possession, to fence in, to build over the whole surface, to raise and maintain any appropriate superstructure including necessary foundations and to deal with it within the limits of railroad uses as absolutely and as uncontrolled as an owner in fee. There was no such easement at common law, and it may well be doubted if it is not a misnomer to extend to this newly invented interest in land the name of easement, perhaps appropriate enough to the railroad's ordinary right of way for its tracks. It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the

cesser of the use for railroad purposes. But whatever it may be called, it is in substance an interest in the land special and exclusive in its nature and which may be the subject of special injury."

The title to the right of way having vested in the company for railroad purposes by payment of the damages to the landowner, or by the damages being secured by acceptance of a bond or its approval by the common pleas, the company cannot thereafter discontinue the proceedings and deprive the owner of his right to the damages he has sustained. The title to the property is in the company, and the owner's right to damages is fixed. The corporation may abandon the right of way and permit it to go back to the owner, but this act will not prevent the owner from enforcing his claim for the damages sustained by him. In Fischer v. The Catawissa Railroad Company, 175 Pa. 554, which was an appeal from the award of viewers assessing damages, the court, on the trial of the cause, permitted the railroad company to withdraw its bond and to discontinue all proceedings for the assessment of damages. This court held that such action was erroneous, and in reversing the order STERRETT, Chief Justice, said (p. 558): "It was unwarranted by any act of assembly or by any of our rulings in the class of cases to which this belongs. As shown by the cases above cited, the effect of the proceedings deliberately instituted by one of the defendants, including the approval and filing of the bond, appointment of viewers, etc., was to divest plaintiff's right to the possession of the land taken, and remit him to his claim for compensation, under the constitution, secured by the bond, etc. Not only had a divestiture of plaintiff's right of possession been effected, but, after the approval and filing of the bond defendants were in the actual and rightful possession of the land in question. Under all our decisions it was then too late to discontinue the proceeding."

1. Before the viewers and subsequently on the trial of the cause in the common pleas, the appellant company's counsel offered to "renounce any and all rights and privileges which they may have or may be supposed to have in" a part of the right of way, being thirteen feet in width and 199 feet in length.

The viewers very properly disregarded the offer and the court likewise rejected it. The offer was first made more than two years after the right of way had been located, the bond to secure the damages had been accepted by the owner of the premises, and the defendant had taken possession of the land and constructed its railroad thereon. At this time and for the two years immediately preceding, the title to the right of way, including this small portion of it, had been in the appellant company. The owner's right to possession had been divested, and her right to compensation had vested and been secured by the bond. At any time after the acceptance of the bond by the owner, if the appellant's property and franchise had been mortgaged or sold, the title to the right of way would have passed, unencumbered by the owner's claim for damages. The purchaser would have taken the title to the part of the right of way proposed to be renounced, and the owner would have been compelled to look to the bond for her damages. It was therefore not within the power of the appellant company, against the objection of the appellee, to renounce any part of the right of way or reconvey it to her, so as to prevent her from recovering the damages which she had sustained. Such logically follows from the appropriation of the land by the appellant for its right of way and the giving of the bond to secure the damages therefor. It may also be suggested that the renunciation presented to the viewers and to the court was utterly valueless for the purpose, as it discloses no authority on the part of the counsel of the railroad company to dispose of its property by gift or otherwise.

A railroad company may, as contended by appellant's counsel, limit the width of its appropriation through the owner's land to less than permitted to be taken by the statute. The width of its right of way cannot exceed sixty-six feet, but it is entirely discretionary with the company whether it shall take that or a lesser width. As plainly pointed out in Jones v. Erie & Wyoming Valley R. R. Co., 144 Pa. 629, it is the duty of the company to define the width of its location when it enters and appropriates the land. In the absence of such action on the part of the company, fixing the width of its right of way,

it will be presumed that it has appropriated the full width al-
lowed by its charter. This presumption, however, is only
applicable where the entry is adverse and upon properties
subject to seizure or appropriation under general laws, and
does not apply to the entry upon a public street: Jones v. Erie
& Wyoming Valley R. R. Co., 169 Pa. 333. But where a rail-
road company under the right of eminent domain enters for
the purpose of appropriating land for its right of way, fixes
the width of its appropriation which is approved and adopted
by its board of directors, gives a bond to secure the damages
resulting from such appropriation, and actually occupies and
constructs its road on the land, the railroad company cannot
thereafter refuse to take any part of the right of way so as to
defeat the owner's right to damages for the width originally
fixed by the company. The appellant contends that the two
cases of Jones v. The Railroad Company, just cited, are au-
thority for a different doctrine, and sustains its contention that
the company may renounce its right of way to the small strip
of land, 13 by 199 feet, and thereby defeat the owner's right
to damages pro tanto. The cases were between the same par-
ties and arose out of the same facts. A railroad company had
located and constructed its road on a street in the city of Scran-
ton. It refused to define the width of its location. If it was
sixty feet it took a part of the plaintiff's premises. He insti-
tuted proceedings to have his damages assessed. The company
still declined to fix the width of its appropriation and resisted
a recovery on the ground that it did not take any of the plain-
tiff's property. The trial court held with the defendant and
a verdict was had against the plaintiff. On appeal, this court
reversed the judgment, holding that as the company had not
defined the limits of its appropriation there was a presumption
that it took the full width fixed by its charter of incorporation,
which would include a portion of the plaintiff's premises. The
court held that in view of the presumption as to the width of
the appropriation and of the evidence tending to show that
the company had taken the full width allowed by its charter,
the case was for the jury. The case was tried again, and an-
other appeal was taken. It was then held that the presump-

tion that the company took the full width allowed by its charter would not prevail in the case because the road was located and constructed on a public street. It was said in the opinion, and upon this the appellant relies to sustain its position in this case, that while the proper time to define the width of the company's appropriation is when the appropriation is made, yet the right to define the location may be exercised afterwards, within a reasonable time; that where the right of way has been located but there has been no actual taking of the land, and the railroad has been constructed and is in operation outside of the plaintiff's boundaries, the company may then define the limits of its right of way and thereby prevent a recovery for land not actually taken. But in these cases, as will be observed, the company had not defined the width of its appropriation nor had compensation been made or secured to the owner for the damages likely to result from the appropriation of the land, and hence the owner's title had not been divested. A bond had been tendered to the plaintiff but it had not been accepted, nor had a bond been presented to or approved by the court to secure the plaintiff's damages. The bond which was presented to the owner of the land recited that the defendant "had located its railroad track near the property of the said John Jones, in the city of Scranton, and it is alleged by him that said property is and will be damaged thereby." It is apparent, therefore, that the cases are not authority for the doctrine contended for by appellant that a railroad company may renounce any part of its right of way after it has appropriated the land and the owner's title has been divested by his acceptance of a bond.

2. Within the right of way as located by the company, there is a spring of water. The appellant attempted to diminish the damages resulting from the appropriation of the appellee's land by renouncing the part of the right of way on which the spring was located. As we have seen, the company was properly defeated in its attempt to evade responsibility for damages for this part of its right of way. For injury to the spring, the appellee is entitled to damages. By condemning the land, however, the company does not secure title to the waters of

VOL. CCXXII—34

the spring, and hence it cannot sell or dispose of the water, nor can it make use of the water for any purpose whatever. It has the right to conduct it, by proper drainage, onto the lands of the appellee, to whom it belongs and who may dispose of it as she pleases. The appellant's appropriation of the land interferes with and changes the manner of the appellee's use of the · spring, and to that extent she is injured. Plank Road Company v. Braden, 172 Pa. 460, was a bill filed by a road company, having the right of eminent domain, to prevent the owner of premises through which the company had condemned a right of way from interfering with a spring within the limits of the right of way. It was there held that the title to the water of the spring was in the owner of the fee, and that he had the right to use the whole of the water, to conduct it by pipes wherever he desired, to consume it, to sell it, or to waste it. In delivering the opinion, Mr. Justice WILLIAMS says (p. 466): "The plaintiff's easement qualified the manner in which the defendant might use his spring but it did not qualify his title. The title was as absolute and unqualified to the water as to the rocks out of which it issued, and the defendant had the right to take it where he pleased and use it as he pleased: Mills on Eminent Domain, p. 70. He had no right to use it in such a manner as to inflict injury on the plaintiff's roadbed but he had the right to use the whole of it, to conduct it by pipes wherever he desired, to consume it, to sell it, or to waste it. The plaintiff has no easement in the spring. It has a right of way for public travel over the land upon which the waters of this spring descended; and for the purpose of preserving its roadbed in a condition suitable for travel it may drain the water off. The right is one of drainage of the roadbed only. It is not a right to appropriate, or to take exclusively possession of, the spring itself, or to exclude the owner therefrom: Mills on Eminent Domain, p. 71 . . . . (p. 467). The corporation has a roadway at the side of which the defendant has a spring. Each must so use its own as to inflict no unnecessary injury on the other, but neither can forcibly exclude the other from what is his own. . . . The corporation may drain its road, but it cannot in the exercise of the right of drainage take forcible posses-

sion of this spring, exclude the owner from access to it, and transport it for its own use or the use of any other person off the owner's land."

· It follows, therefore, that in assessing the damages sustained by the appellee, she is not entitled to the value of the spring. The title to it remains in her and its water may be used by her. While this is true, yet her use of the water of the spring may be interfered with by the use of the land by the appellant company and for that she is entitled to be compensated. As we have seen, the company has the right to the exclusive possession of the land for railroad purposes, and it may interfere with the spring and the use of it by the owner of the land to any extent found necessary in the use of its right of way for such purposes. It has the right to occupy the whole width of its right of way, including the ground from which the water issues in this spring, and place thereon its tracks or any structures necessary in the operation of its road. It may therefore prevent the appellee from taking the water directly from the place it issues from the ground by depositing dirt or erecting structures thereon. The manner of using the spring, her property, is therefore interfered with by the appellant's appropriation of the land, and to the extent of her injury she is entitled to compensation. The amount of the damages will depend upon the extent of the injury which, of course, must be made to appear by evidence. If the use to which the appellant puts this part of its right of way should destroy the spring, the appellee must be awarded compensation for the value of it. In Wheatley v. Baugh, 25 Pa. 528, Chief Justice LEWIS, delivering the opinion, said (p. 533): "The owner of land on which a spring issues from the earth, has a perfect right to it against all the world, except those through whose land it comes. He has even a right to it, as against them, until it comes in conflict with the enjoyment of their own property. . . . Even a railroad corporation, armed by law with the right of eminent domain, and having power to take private property for the construction of its road, is answerable to the owner of a spring for destroying it, although its destruction be caused by excavations on the land of an adjacent proprietor."

3. In condemnation proceedings, a railroad company in the exercise of its right of eminent domain secures not only the surface of the land but also so much of the underlying minerals as may be necessary to support the surface. The company's entry upon the land is an appropriation of the subjacent strata of coal or other minerals so far as necessary to support the surface for any purpose to which it may be put for railroad uses: Penn Gas Coal Company v. Gas Company, 131 Pa. 522; Davis v. Gas Company, 147 Pa. 130. In the former case, a bill was filed by the plaintiff, a coal company, to restrain the defendant gas company from laying its pipes through the surface of the land, owned by another party, until the filing and approval of an adequate bond to the plaintiff company securing payment of any damages which might accrue to it. The owner of the land had granted the coal to the plaintiff company and released his right to the support of the surface, thereby enabling the company to remove all the coal without regard to the effect upon the surface. The trial court refused the injunction, but this court reversed, and directed the court to require the gas company to file the bond. Mr. Justice WILLIAMS, delivering the opinion, said (p. 533): "The right of eminent domain cannot be abridged or defeated by the contracts between the private owners, or by the release of the owner of the surface. An entry by the state upon the surface is an entry upon the subjacent strata so far as they are necessary to support the surface for the purposes of the canal, railroad, pipe line, or other structure to be built thereon. If the corporation making the entry has no knowledge that the right of support has been released, or if it fails for any reason to tender a bond to the owner of the coal, the remedy of the owner is by bill to restrain, or by a proceeding to obtain an assessment of the damages sustained." In that case it is distinctly ruled that both the surface and coal owner are entitled to compensation for the injury sustained by the appropriation of the right of way.

In the case in hand, the owner of the surface had, prior to the appropriation of the land, conveyed the coal underlying the surface with sufficient mining rights to enable the grantee

to remove all the coal regardless of its effect upon the surface. If any part of the coal was necessary for the support of the surface, occupied by the appellant company, the owner of the coal is entitled to compensation. When, therefore, the company entered and appropriated the land for its right of way, it was required to compensate both the owner of the surface and the owner of the coal for the damages resulting from the appropriation. The owner of each is entitled to damages to the extent of his holdings, and it is apparent that the amount of damages to which the owner of the surface is entitled will depend upon the interest she has in the land. The extensive mining rights which she granted to the purchaser of the coal might affect the interest or estate which she has in the land. Those rights belong to the owner of the coal and must be considered as a part of his property in estimating the damages done him by the company in appropriating the right of way. It therefore follows that a witness in testifying to the amount of damages due the owner of the coal or the owner of the surface must be acquainted with the title of the party seeking to recover damages. In testifying in the action brought by the owner of the surface, he should be informed that the ownership of the coal and mining rights is in another, and that fact should be taken into consideration by the witness if the appellant's appropriation imposed any servitude on the coal. The statement of the fact will not, as appellee seems to think, confuse the witness. Counsel need not read from the deed the mining rights, the mere statement that the coal and the right to remove it all regardless of the effect upon the surface is sufficient information for the witness. He will then have the requisite knowledge of the titles to enable him to testify intelligently.

4. The fourth assignment of error is not sustained. The objection was made to the competency of the testimony offered and not to the competency of the witness. It was certainly competent to show the damages sustained by the appellee, and that is all there is in the question. The answer of the witness complained of in the fifth assignment of error should have been stricken out. The fact that the witness

would not wish to own the farm, after the appellant's appropriation of the right of way, was immaterial as affecting the damages. The testimony complained of in the sixth assignment of error was stricken out, and hence the assignment need not be considered.

So far as the matters complained of in the assignments are in conflict with this opinion, they are sustained and the judgment is reversed with a venire facias de novo.