# Swift and Given's Appeal.

1. In the location and construction of a railroad the Act of 19th of February, 1849, P. L., 83, prohibits the corporation from passing through *inter alia*, any dwelling house in the occupancy of the owner or owners thereof without his, her, or their consent.    This necessarily includes such curtilage connected therewith as is necessary for its reasonable enjoyment as a dwelling house for the owner and his family.

2. The exact extent of curtilage cannot be defined by any arbitrary rule.    As each case arises, the right of the owner and occupier of the dwelling house against hostile location of a railroad must be determined by a consideration of what is necessary for a reasonable and proper enjoyment of the house, as a residence, in view of its location and surroundings.

January 18th, 1886.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the decree of the Court of Common Pleas,

No. 4, of *Philadelphia county*, sitting in equity: Of January Term, 1885, No. 130.

The bill of complainants, Caroline Swift and Hannah Given, sets forth that complainants are seized in fee of a certain lot of ground or messuage, with the three-story brick dwelling house erected thereon, situate on the south side of Ontario street, at the distance of 160 feet westward from the west side of Twenty-second street, in the city of Philadelphia, containing in breadth 100 feet, and in depth 225 feet, to Bellevue street, and having a front on that street of 100 feet. That the said property is greatly improved, and was used by complainants' parents as a place of residence and dwelling house from 1854 until their demise, and since that time has been so used by complainants as their dwelling house, homestead and residence, and is now actually occupied by them as a dwelling house, and is not kept for rent, and has not been kept for rent at any time since the acquisition of title by complainants, and that all of said land is necessary to the enjoyment of said dwelling house. That the said defendant is a corporation incorporated on the second day of January, A. D. 1883, by filing articles of association in the office of the Secretary of the Commonwealth, according to the provisions of an Act of Assembly of the Commonwealth of Pennsylvania, approved April 4th, 1868, entitled " An Act to authorize the formation of Railroad Companies," with authority to locate and construct a railroad, beginning at a point on the railroad of the " Connecting Railroad Company, between Thirteenth street and Ridge avenue ; thence extending to and terminating in, at or near Chestnut Hill, in the Twenty-second ward of the city of Philadelphia." That by virtue of said authority defendant proposes constructing a line of railroad for continuous use and operation between said points. That your orators are informed and believe that the company defendant intends to take part of their property, above described, for the purpose of constructing said railroad. That the said company defendant has notified complainants that it intends to take part of their said premises, by a right of eminent domain claimed by it, and against their consent, for the uses of said road to be constructed by it. That upon March 31st, A. D. 1883, the company defendant, under the provisions of an Act of Assembly of the Commonwealth of Pennsylvania, approved April 9th, A. D. 1856, (P. L., 288), presented a bond of indemnity for $600, payable to your orators, to secure the payment of the damages they might sustain by reason of the company defendant. entering upon their property mentioned in paragraph one of this bill, in the Court of Common Pleas, entitled of March Term, 1883, No. 871, which was upon that

day by the court approved and filed. That by section 5 of
the Act of April 4th, A. D. 1868, (P. L., 62), it is enacted
that any corporation created by that Act "shall be entitled
to exercise all the rights, powers and privileges, and be sub-
ject to all the restrictions and liabilities of the Act regulating
railroad companies, approved the 19th day of February, A. D.
1849, and the several supplements thereto, as fully as if said
powers were specially incorporated in said charter." That
the said Act of February 19th, A. D. 1849, section 10, (P. L.,
83), is as follows : " The president and directors of such
company shall have power by themselves, their engineers, su-
perintendents, agents, artisans and workmen, to survey, ascer-
tain, locate, fix, mark and determine such route for a railroad
as they may deem expedient, not, however, passing through
any burying ground or place of worship, or any dwelling
house in the occupany of the owner or owners thereof, with-
out his, her, or their consent." . . . . . That your plaintiffs
are advised and so charge, that the said company defendant is
without any legal authority to build its said road over and
upon your petitioners' messuage or tenement described in
bill ; and that said company defendant is without any legal
authority to take by the right of eminent domain any of the
property of your orators mentioned and described in this bill.
They therefore pray :

First. That the defendant be decreed to answer the premises.

Second. That the defendant be enjoined specially until the
final hearing, and perpetually thereafter, from further pro-
ceeding at law against plaintiffs, under the procedure in Court
of Common Pleas, No. 4, entitled of March Term, 1883, No.
871.

Third. That defendant be enjoined specially until final
hearing, and perpetually thereafter, from entering upon or
anywise interfering with the messuage, tenement or home-
stead of plaintiffs, described in this bill.

Fourth. And that such further and other relief may be
granted as will protect the premises of your orators from
trespass, invasion and injury.

The answer admits that plaintiffs are seized in fee of the
house, messuage and property first mentioned, and that the
same is occupied by complainants as a dwelling house, as fol-
lows : " It " (the defendant) "saith it hath no knowledge
or information of the occupancy of said house, before its in-
corporation, except as derived from said bill. Since then it
admits that said dwelling house has been in the occupancy of
plaintiffs as owners. It denies that all of said land is necessary
to the enjoyment of said house. The following is a line dia-
gram of the *locus in quo :* "

[Swift and Given's Appeal.]

The defendant admits its incorporation as above and its intention to construct a line of railroad, and that it has appropriated for that purpose about 288 square feet of ground indicated on the above diagram, being the small triangular corner, and states that the outer line of said tract is 150 feet distant from the dwelling house at its nearest point, and that access to or egress from said dwelling house is not affected.

That said bond hereinbefore mentioned was presented to the court, after notice previously given to plaintiffs, who filed an exception thereto that the same was insufficient only, and that the said defendant is advised that as plaintiffs had full legal opportunity to make the same exception to a right of entry following the approval of the bond which is now made by them, that no relief in equity for said alleged grievance will be afforded.

That the above citations of statute are accurate so far as given, but that defendant is unable to apprehend the special pertinency thereof, inasmuch as the route of this defendant, for which a right of way is sought, is not located so that the same passes through the said dwelling house, and that it does not claim to build its road over and upon the messuage or tenement of said plaintiffs, if by such averment is meant the dwelling house, but it does claim to build its road on, over and upon the triangular piece of ground above indicated.

The case was heard by the court on bill and answer. After hearing, the court decreed that the bill be dismissed, plaintiffs to pay costs. The court filed no opinion.

The plaintiffs took this appeal and filed the following assignments of error :

1st. The court erred in dismissing the bill.

2d. The court erred in deciding that the remedy of the plaintiffs, if any, is at law.

3d. That the court erred in refusing to enjoin the defendant from proceeding at law against plaintiffs, under the procedure in the Court of Common Pleas, No. 4, of March Term, 1883, No. 871.

4th. That the court erred in refusing to enjoin the defendant from entering upon, taking, or in anywise interfering with the messuage, tenement, homestead or dwelling house of the plaintiffs.

5th. That the court erred in deciding that the route of defendant's railroad does not pass through the plaintiffs' dwelling house.

6th. That the court erred in deciding that the curtilage attached to plaintiffs' dwelling house is not a part of said dwelling house.

*J. Howard Morrison*, for appellants.—The contention in this case is in regard to the construction of the word "dwelling house," used in the Act of February 19th, 1849, P. L., 83.

It is contended by the defendants that the word dwelling house, as used in this Act, means only the actual building, and so long as the building is untouched the right of the company to take is absolute. Such a construction would be forced and unnatural, and against all the well established rules for the construction of statutes. To obtain the proper construction of this Act, it will be well to examine it by each of the canons which are laid down as governing the interpretation of statutes. And first we have :

The rules: terms of art or technical terms must be taken according to the acceptation of the learned in each art, trade and science. And if words have acquired a definite meaning in law, they must be so expounded : Blackstone's Comm., 59; Kent's Comm., *462, *464; Dwarris on Statutes, 198–9, 274; Brocket *v.* Ohio and Penn. R. R. Co., 2 Harris, 241.

Secondly. If the words of a statute are doubtful it may be compared with statutes *in pari materia :* Blackstone's Comm. Intro., 59; 1 Kent's Comm., *463; Neff's Appeal, 9 Harris, 247.

If it can be gathered from a subsequent statute what meaning the Legislature attached to the words of a former one, this will amount to a legislative declaration of its meaning : United States *v.* Freeman, 3 How., 556; Fort *v.* Burch, 6 Barb. (S. C.) 60–9.

Under these rules let us compare several Acts passed by the General Assembly about the time of passing the Act in question : Act of April 13th, 1846, sec. 11, (P. L., 319), incorporating the Penn. R. R. Co.; Act of 27th of March, 1848, sec. 3, (P. L., 274); Act of February 19th, 1849, sec. 10, (P. L., 83), the Act under which the defendant claims to act; Act of 23d of April, 1864, (P. L., 535.) This Act came before this court for construction in Penn. R. R. Co. *v.* The Lutheran Congregation, 3 P. F. S., 452.

There seems to have been no difficulty about the construc-

tion of the word house in England under the Railway Act of 1845, sec. 92. For convenience of comparison I append both clauses:

| Pennsylvania. | England. |
|---|---|
| Act 1849, sec. 10. | Sec. 92, Land Clauses, Consolidation Act (1845). |
| . . . . . " Not, however, passing through any burying ground or place of public worship, or any dwelling house in the occupancy of the owner or owners thereof, without his, her or their consent." . . . . | " That no party shall at any time be required to sell or convey to the promoters of the undertaking a part only of any house or other building or manufactory, if such party be willing and able to sell and convey the whole thereof." |

Under the above quoted section of the Railway Act, the English courts have in every case decided that the curtilage of a house is part thereof.

The following are some of the more important cases in which the word " house " in this Act is construed :

Decided 1853, Cole *v.* West London R. W. Co., 27 Beavan, 242.

Decided 1857, Grosvenor *v.* Junction R. W. Co., 26 L. J. (Ch.), 731.

Decided 1859, King *v.* Wycombe R. W. Co., 29 L. J. (Ch.), 462.

Decided 1861, The Governors *v.* Charing Cross R. W. Co., 30 L. J. (Ch.), 395.

Decided 1868, Marson *v.* London and Chatham R. W. Co., 37 L. J. (Ch.), 483 ; Pinchin *v.* London and Blackwall R. W. Co., 1 Kay & J., 34 ; 5 DeGex, M. &. G., 851.

Cottages used as warehouses, though separated from the factory by a road, held to be part of the factory: Spackman *v.* Great Western R. W. Co., 1 Jur. N. S., 790 ; Sparrow *v.* Oxford, &c. R. R. Co., 2 DeGex, M. & G., 94.

All the rules and cases above cited refer to the construction which the common law places upon the word house, and that common law meaning is well laid down, both in this state as well as in England : Bennett *v.* Bittle, 4 Rawle, 341, decided 1834 ; Rogers *v.* Smith, 4 Barr., 101 ; decided 1846.

Under the English authorities we have a line of decisions extending from 1556 to 1868, commencing with 1556, Hill *v.* Grange, 1 Plowden, 171 ; 1600, Carden *v.* Tuck, Croke, Eliz., 89 ; 1684, Smith *v.* Martin, 2 Saund., 401 ; 1788, Clements *v.* Collins, 2 Term, 498 ; 1853, Cole *v.* West London R. W. Co., *infra ;* 1857, Grosvenor *v.* Junc. R. W. Co., *infra ;* 1859, King *v.* Wycombe R. W. Co., *infra ;* 1861, Governors *v.* Charing

Cross R. W. Co., *infra ;* 1861, Marson *v.* London and Chatham R. W. Co., *infra.*    See also Coke Litt., 56*a.*

There remains to notice one rule of construction which has a strong bearing upon the construction of an Act of Assembly, such as the Act of 1849; that a charter of incorporation must be construed in favor of the public and against the grantees: Van Horne *v.* Dorrance, 2 Dall., 316 ; Jackson *v.* Lamphire, ·3 Peters, 289 ; Beatty *v.* Lessee, 4 Id., 168 ; Charles River Bridge *v.* Warren Bridge, 11 Id., 420 ; Richmond, &c. R. R. Co. *v.* Louisiana R. R. Co., 13 How., 81 ; Tennessee & Ala. R. R. Co. *v.* Adams, 3 Head., 596 ; Bradley *v.* New York & New Haven R. R. Co., 21 Conn., 294 ; Commonwealth *v.* Erie, &c. R. R. Co., 3 Casey, 339; Dwarris on Statutes, 258 ; Sunbury Ferry Co. *v.* Heim ; opinion by GORDON, J., May 26th, 1884 ; Legal Int., January 30th, 1885.

In regard to the allegation of appellees, that the appellants were precluded from seeking remedy in this proceeding because they had filed exceptions to the sufficiency of the bond under the common law proceeding, it is only necessary to refer to the decision of this court in the case of Getz & Co. *v.* Phila. & Reading R. R. Co., 40 Leg. Int., 336.

*David W. Sellers,* for appellee.—The decree of the court below was entered on bill and answer. From these it appears:

1. That the railroad does not pass through any dwelling house, nor directly under or over one. If house lines were protracted up and down, no hindrance would be met.

2. That the land taken in no wise affects access to, or egress from, said dwelling house.

A perfectly similar case, under a similar statute, is reported in 47 Maine, 345, as follows : Moses Wells *v.* Somerset and Kennebec Railroad Co.    It is provided by sec. 5, ch. 81, of Revised Statutes of 1840, that in locating railroads " no corporation shall take any meeting-house, dwelling house, or public or private burying ground, without the consent of the owners thereof."    Held, that the term dwelling house, as here used, means only the house, and includes no part of the garden, orchard, or curtilage.

The right of eminent domain confers upon the Legislature authority to take private property, for public uses, when the public exigencies require it, subject only to that provision of our Constitution which exacts just compensation ; and a dwelling house is no more exempt than any other species of real estate when the Legislature, in the exercise of that right, determines that the public exigencies require it.

The ruling in the above case has been followed by the Com-

mon Pleas of Montgomery County before this court in Clegg's Appeal, S. C. January, 1883.

Chief Justice MERCUR delivered the opinion of the court, February 1st, 1886.

In the location and construction of a railroad the Act of 19th February, 1849, prohibits the corporation from passing through, *inter alia*, " any dwelling house in the occupancy of the owner or owners thereof, without his, her, or their consent." This language must be so construed as to give a reasonable effect to the purpose and intent of the statute.

It certainly does not mean that the prohibition extends only to preventing the railroad from actually passing " through " the dwelling house. When the latter is occupied by the owner thereof, the statute gives it all the protection necessary for its reasonable enjoyment as a dwelling for the owner and his family. This necessarily includes some curtilage connected therewith. The exact extent of that curtilage cannot be defined by any arbitrary rule as to distance. As each case arises the right of the owner and occupier of the dwelling house, against hostile location of a railroad, must be determined by a consideration of what is necessary for a reasonable and proper enjoyment of the house as a residence in view of its location and surroundings. Tested by that rule we do not think the location of the railroad in question is in conflict with the statute. The land to be taken is one corner of the rear end of the lot. It is 155 feet from the nearest portion of the house. It does not interfere with the use or enjoyment of any adjacent outbuildings, or ornamental structures of any kind, nor with any shrubbery or beautified lawn. It in no manner prevents access to the street, nor causes any substantial objection to the occupancy of the building as a dwelling house. In so far as it causes injury or damage to the house or lot, the appellants are entitled to recover compensation under the statute.

> Decree affirmed, and appeal dismissed at the costs of the appellants.

GORDON, J., dissented.