## Westside Electric Street Ry. Co. v. West Penn Power Co.

*Corporations — Eminent domain — Light, heat and power companies — Street railways—Crossing right of way of street railways—Limitation on right of power companies to appropriate—Ownership by street railway of fee—Equity—Injunction—Delay of street railway in asserting rights—Act of May 21, 1921.*

1. The exception of the "property of a public service company" from appropriation by a light, heat and power company under the Act of May 21, 1921, P. L. 1057, means only such property as is or may become essential or necessary to a proper exercise of the franchises of the public service company.

2. In case of street railways, this includes only such interest in its right of way as it would acquire by condemnation, but the residue is not included within the exception, and as to this, an additional servitude may be imposed by a power company.

3. If a street railway owns a fee simple title in a portion of its right of way, its interest therein in excess of such interest as it would have acquired therein by condemnation, is subject to appropriation by a power company.

4. The construction by a power company of its lines of wires over the right of way of a street railway, without touching the surface and many feet above the facilities of the railway, is not an infringement, nor is it a taking; but as to the residue in fee of the portion of the right of way owned by the street railway company, it is a taking for which the power company is liable.

5. In appropriating its right of way over the railway's residue in fee, the power company is obliged not only to obtain from the Public Service Commission a certificate of public convenience, but also to secure the railway company by proper bond for damages resulting from such taking.

6. If the power company constructs its crossing without having first secured the railway company, the latter is entitled to equitable relief.

7. If, in such case, it appears that the power company had proceeded in good faith, but without filing a bond, and that the railway company, although notified, took no action whatever and permitted the power company to make costly expenditures, and it also appears that the damage to the railway company is slight, the power company will be restrained only to the extent of speeding a legal appropriation by it of the right of way in question.

Bill for injunction. C. P. Washington Co., No. 3037, in Equity.

*A. M. Linn* (with him *D. M. McCloskey* and *Tener & Tener*), for plaintiff.

*Donnan & Miller* (with them *McCahill, McCahill & Taber*), for defendant.

CUMMINS, J.—From the evidence taken at final hearing the court makes the following

### Findings of fact.

1. Both plaintiff and defendant are public service companies.

2. The plaintiff, Westside Electric Street Railway Company, some years ago constructed and still owns and operates a street railway line, a portion of which is located in Washington County, Pa.

3. The defendant was incorporated as a Pennsylvania corporation for the purpose of supplying light, heat and power, or any of them, by means of electricity to the public.

4. In connection with the furnishing of this service, defendant had under construction a system of transmission lines between Charleroi, Pennsylvania, and Cheat Haven, Pennsylvania, as part of a larger system connecting Springdale power station, Pennsylvania, and Windsor power station, West Virginia, and was at the time furnishing light, heat and power both in Washington County and Fayette County, Pa., by means of this system.

5. In connection with the construction of this system and in furnishing adequate service to the public, it was necessary for defendant company to cross, with its facilities, over the right of way, tracks and facilities of plaintiff company.

6. At the point of crossing plaintiff owns a small tract of land in fee, but the same forms a part of plaintiff's right of way, and is so held for that use alone.

7. Before constructing its crossing over the property of plaintiff, defendant gave to plaintiff company notice, as required by General Order No. 13 of the Public Service Commission, of its intention so to do; but neither tendered nor filed any bond to indemnify plaintiff against such damages as might result therefrom.

8. No protest against such construction was filed by plaintiff with the Public Service Commission.

9. The crossing was constructed by defendant on Dec. 7, 1924, after the cars of plaintiff company had ceased to operate on that day, about midnight or later.

10. Said high-tension power line consists of six wires sufficient to conduct 132,000 volts of electricity, two telephone wires and two ground wires.

11. The crossing with its facilities constructed by defendant does not touch at any point the physical property of plaintiff, but is high above the facilities of the latter, the two ground wires being hung at a height of 194.9 feet, the six high-tension power wires, in sets of two each, at a height of 176.8 feet and 150.6 feet, respectively, and the telephone wires at a height of 145.2 feet above plaintiff's trolley wire; the span between the towers carrying defendant's said facilities across the facilities of the plaintiff being 1185 feet in length.

12. The crossing constructed is in full compliance with the terms, provisions, regulations and conditions of General Order No. 13 of the Public Service Commission.

13. The crossing was constructed under a *bona fide* claim of right, but without the consent of plaintiff company.

14. Plaintiff, although it knew of defendant's intention to construct such crossing, and that its facilities were, at a large expense, being constructed up to the very place of crossing, filed no bill and made no move to obtain a preliminary injunction until after such crossing had been completed.

15. The damage done to plaintiff's property is comparatively trivial, whereas, if a mandatory injunction be granted, the loss and inconvenience to the defendant, and probably to the public which it serves, would be very considerable.

### Conclusions of law.

1. The defendant, being a light, heat and power company, has, under the Act of May 21, 1921, P. L. 1057, power to appropriate property necessary for its corporate use in effecting transmission and distribution of electricity, except that, as to the property of other public service companies, it could not appropriate such as were essential or necessary for the corporate uses of such companies.

2. The right of way necessary and essential in the operation of a street railway is only such as would be acquired by condemnation, and is in the nature of "an exclusive easement" in the surface for railroad purposes alone, with the right to surface support.

3. What constitutes plaintiff's right of way comes within the exception of the Act of May 21, 1921, and cannot be appropriated, but its residue in the fee is not included within such exception, and upon it, but not upon what would constitute such right of way, defendant may, by appropriation for its corporate purposes, impose an additional servitude to the same extent as if the title to such residue in the fee were still vested in plaintiff's vendor.

4. The construction by defendant of its overhead crossing without touching the surface, and at an elevation many feet above the facilities of plaintiff company, does not in any manner infringe upon plaintiff's exclusive use of the surface for railroad purposes, and as to such right of way is not a taking, but as to the residue in the fee, which in this case happens to be vested in plaintiff, it is a taking for which defendant is liable.

5. In appropriating its right of way over plaintiff's residue in the fee (its interest therein in excess of its right of way), defendant was obliged not only to obtain from the Public Service Commission a certificate of public convenience or its equivalent, but also to secure plaintiff by proper bond for the damages resulting from such taking.

6. Defendant having constructed its crossing without having first secured plaintiff against the damages resulting therefrom, it follows that plaintiff is entitled to equitable relief.

7. The court has jurisdiction in the premises.

8. In view of the fact that defendant had the legal right to appropriate the right of way in question, and did what its officers believed was a compliance with the law in making such crossing, and in view of the further facts that plaintiff, although notified that the crossing was to be made, filed no bill until after such crossing had been constructed, and moved for no preliminary injunction, and that the damage to plaintiff is apparently trivial, while, if a mandatory injunction be granted, incalculable loss will probably result to defendant, it follows that defendant company should be restrained only to the extent of speeding a legal appropriation by it of the right of way in question; the costs of the proceedings to be paid by defendant.

## Discussion.

Light, heat and power companies were, under the Act of May 8, 1889, P. L. 136, given the right of eminent domain upon public streets, lands and highways (Brown v. Electric Light Co., 208 Pa. 453), and under this statute it would appear to be clear that such companies had authority to cross the right of way of a street railway company only where such right of way was crossed by a public highway: Railway Co. v. Electric Ry. Co., 177 Pa. 143. This limited right of eminent domain vested in light, heat and power companies was extended by the Act of May 21, 1921, P. L. 1057, which provides: "Every [such] corporation . . . shall . . . have the following rights and powers: '. . . (b) to appropriate property outside the limits of public streets, etc., . . . and within the borough, town, city or district where it may be located, necessary for its corporate use in the construction, erection, operation or maintenance of its . . . works, equipment and facilities for generating electric light, heat and power . . . for transmission or distribution thereof, except that streams, rivers or waters of this Commonwealth, or any of them, or the land covered thereby, or other public property, or property of a public

service company, or property used as a burying-ground or place of public worship or a dwelling-house . . . shall not be appropriated.' "

The construction of the exception to this general grant becomes of the utmost importance in disposing of the questions involved in this proceeding. The legislative intent, if discoverable, must prevail. What, then, was the purpose intended to be effected by this limitation? Was the property of public service companies to be protected against this general power of appropriation because such owners were to constitute a favored class, or because of the uses for which these properties were held? Homes and cemeteries are excepted because of the purposes for which used, and it is as equally clear to us that the real property of a utility company to be excepted is only such as is or may become essential or necessary to a proper exercise of its franchise; and this, it might be said, is substantially but declaratory of the common law: Pittsburgh Junction R. R. Co. *v.* Allegheny Valley R. R. Co., 146 Pa. 297, 307; In re Petition of C. & P. R. R. Co., 2 Pitts. Rep. 348; Perry County R. R. Co. *v.* Railroad Co., 150 Pa. 193. The legislature, when enacting this statute, is presumed to have had in mind the constitutional limitations upon the powers of corporations; that "no corporation shall . . . take or hold any real estate, except such as may be necessary and proper for its legitimate business" (Constitution of Pennsylvania, art. XVI, § 6), and that "no incorporated company doing the business of a common carrier shall . . . hold or acquire land, . . . except such as shall be necessary for carrying on its business;" and also that it was cognizant of its own Act of May 3, 1905, P. L. 368, by which it is provided that street railway companies shall only have power "to take, hold, etc., . . . such real . . . property . . . as the purposes of the corporation shall require." If plaintiff company had purchased a farm for purposes wholly unconnected with its franchise (and no one other than the Commonwealth could object if it did: Market Co. *v.* Railroad Co., 142 Pa. 580; Pittsburgh V. & C. Ry. Co. *v.* Railroad Co., 159 Pa. 331), certainly it could not be contended that such land fell within the scope of that class of real property excepted by the act under discussion. It was clearly the legislative intent to except from the general grant only such interest in real property of those companies as is or may become necessary or essential to their several respective franchises. The defendant company could not, therefore, appropriate so much of plaintiff's land as constitutes its right of way. The interest in the remainder of the fee, however, whether owned by plaintiff company or by some other person, would be subject to appropriation. Upon it defendant company could, under its power of eminent domain, impose an additional servitude, so long as such appropriation would not amount to a taking of what constitutes plaintiff's necessary exclusive right of way. As to plaintiff's interest in the land in question in excess of its exclusive right of way, plaintiff held it subject to be appropriated in the same manner as if held by an individual. No part of the surface of plaintiff's land has been occupied by defendant company. The wires and facilities of the latter cross, by means of towers, high above the tracks and facilities of plaintiff company, so that it cannot be said that there is, in any sense or in the slightest degree, a taking of what would constitute plaintiff's right of way, if its interests therein were only such as might have been acquired by appropriation. While defendant's appropriation does not amount to a taking of such of plaintiff's interest in the land involved as constitutes its right of way, yet it is a taking or imposing of an additional servitude on the residue of the fee, for which the condemnor will be liable to the owner: Pittock *v.* Tel. Co., 31 Pa. Superior Ct. 589, 594; and see Sterling's Appeal, 111 Pa. 35; Pennsylvania R. R.

Co. v. Montgomery County, etc., Ry. Co., 167 Pa. 62, 70; and this conclusion is not in conflict with Pennsylvania R. R. Co. v. Greensburg, etc., Ry. Co., 176 Pa. 559, 576; Pennsylvania R. R. Co. v. Traction Co., 25 Pa. Superior Ct. 115, 128; North Penna. R. R. Co. v. Inland Traction Co., 205 Pa. 579, 589, and other kindred cases, which are authority for the proposition that for a street railway to cross the right of way of a railroad company at a public road crossing imposes no additional servitude at such point, even although the railroad company may own such right of way in fee; for the railroad company's right to use its right of way, where the same crosses a public road, is not exclusive, but at such crossing "the railroad company [which is itself a public highway: Rice v. Coal Co., 186 Pa. 49, 58; Sharpless v. Mayor of Philadelphia, 21 Pa. 147; Erie, etc., R. R. Co. v. Casey, 26 Pa. 287, 307] holds subject to the lawful uses of the highway, and amongst them its use for the passage of the cars of a street railway company over the route authorized by its charter:" Pennsylvania R. R. Co. v. Traction Co., 25 Pa. Superior Ct. 115, 130. In this last-mentioned group of cases, while the principle is recognized that a railroad company's right in its right of way at a public road crossing is not precisely the same as that of "its vendor would have been if he had not parted with his title," yet it is likewise recognized in all of these authorities that this apparent limitation has application only at public road crossings, where the Commonwealth and a railroad company jointly have the right to use what otherwise would have constituted the right of way of the railroad company, and that, as to its right of way at other points, it stands on the same plane as any other owner.

In arriving at the foregoing conclusions, we have assumed, without discussion, that the right of way of a railroad or street railway company acquired by appropriation, as an interest in land, constitutes an exclusive right of way. It is contended, however, that this interest is a fee or its equivalent, and that, therefore, defendant's appropriation is a taking of plaintiff's property excepted by the act, but we are satisfied, after a very careful examination of the authorities, that they do not sustain this contention.

The title or interest acquired by a company under the power of eminent domain has been described in numerous cases. In some of the earlier ones it is referred to as an easement. In Lawrence's Appeal, 78 Pa. 365, 369, it is said to be an "easement and right of way . . . over the surface." But it is more than an ordinary easement or right of way, for "it is a right to exclusive possession . . . as absolutely and as uncontrolled as an owner in fee. There was no such easement at common law, and it may well be doubted if it is not a misnomer to extend to this newly-invented interest in land the name of easement. It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee terminable on the cesser of the use for railroad purposes:" Pennsylvania Schuylkill Valley R. R. Co. v. Paper Mills, 149 Pa. 18. It "is often spoken of as an easement, but the term is used in a loose way for the purpose of distinguishing it from the fee:" Chief Justice Paxson, in Pittsburgh, Fort W. & C. Ry. Co. v. Peet, 152 Pa. 488. It "has been variously defined, and in this State may be said generally to be an *exclusive easement*, closely akin to a fee; sometimes termed a base, conditional or qualified fee, with the right of reverter to the original owner . . . in case of abandonment. The condemnor has the free and exclusive enjoyment and use of the land taken for a public purpose as though it was owned in fee:" Mr. Justice Kephart, in Citizens Electric Co. v. Susquehanna Boom Co., 270 Pa. 517, 522, 523. But the interest of the condemnor, whatever called, is limited to the purposes for

which condemned, e. g., a railroad company may "deal with it within the limits of railroad uses as absolutely and as uncontrolled as an owner in fee:" Pittsburgh, Fort W. & C. Ry. Co. v. Peet, 152 Pa. 488, 493. The condemnor has the free and exclusive use of the land appropriated only for the public purposes taken: Citizens Electric Co. v. Susquehanna Boom Co., 270 Pa. 523. And so it follows that a railroad company cannot impose upon its right of way, which it has acquired by condemnation, an additional servitude or easement foreign to railroad purposes, e. g., give to a telegraph company the right to erect on such right of way poles and wires for the private use of such telegraph company. In such case, the owner of the land in fee on which the right of way is located may maintain against such telegraph company an action of trespass: Pittock v. Telegraph Co., 31 Pa. Superior Ct. 589, 594. The difficulty does not appear to be so much with the nature of the interest acquired as with the technical legal term by which it should be called. The condemning company has the exclusive use of the surface, but only for its franchise purposes, and as necessary and essential to this limited use, is entitled to surface support; but its title extends neither "up to the heavens nor down to the centre of the earth:" Pittock v. Telegraph Co., 31 Pa. Superior Ct. 589, 595. It has no interest in the coal, oil, gas or sub-soil (Rice v. Clear Spring Coal Co., 186 Pa. 49, 61), but only to support; nor has it any interest in the space high above its tracks and facilities. It is clear, we think, that a railroad or street railway company which has acquired its right of way by appropriation cannot prevent a light, heat and power company from crossing high above its facilities, any more than it could prevent the owner of the fee from asserting his right to the sub-soil: Rice v. Clear Spring Coal Co., 186 Pa. 49, 61. It can demand support from below the surface, and a like protection from interference with its facilities from the air, but so long as its exclusive use of the surface has not been infringed upon, there has, as to its right of way, been no taking.

Defendant's contention that, even if it had no power to condemn, the Public Service Commission has and can exercise such right where the facilities of one public service company cross those of another, is not tenable. Where the Public Service Commission, as plaintiff on behalf of the Commonwealth, undertakes to compel a railroad company to abolish a grade crossing, it must, of course, and is given the power to exercise the right of eminent domain to effect such end, because the public service company involved is ordinarily compelled to make such crossing against its will: Erie R. R. Co. v. Public Service Co., 271 Pa. 409; section 12 of Act of July 17, 1917, P. L. 1025, 1030; but the public service company does not possess such powers for the benefit of a plaintiff company, which itself has no such authority. A public service company which seeks to cross with its facilities the facilities of another public service company, where the appropriation of property is necessary, must not only have, but must exercise, the right to condemn such property, and must likewise, in addition, secure from the Public Service Commission a certificate of public convenience evidencing its approval of such crossing or, in lieu thereof, comply with such general order as may be adopted by the commission.

The commission, by General Order No. 13, provides: "Such crossings of wires over . . . the facilities of other public service companies may be constructed by the companies *lawfully authorized so to do* in accordance with said specifications without the particular approval of this commission, on condition that notice of said construction specifying the particular point of crossing shall be given to the public service company whose facilities are to

be crossed prior to the beginning of the construction of said crossing;" and providing, further, that "protest against the construction . . . may be made to the commission at any time by filing formal complaint, which shall set forth, etc."

Whether the commission was vested with the power of eminent domain, by which it could itself have authorized the crossing under consideration, is not, however, in this case material, as it is not claimed that the commission either exercised, or attempted to exercise, any such authority; and, moreover, only those companies can make use of General Order No. 13 which themselves have authority to appropriate their own rights of way, as is expressly provided by said general order itself.

We are satisfied that, from a standpoint of mere legal right, this plaintiff is entitled to some equitable relief. In determining, however, the nature and extent of this relief, the court must consider some material facts bearing thereon; that plaintiff was notified of defendant's attempt to comply with the general order of the Public Service Commission as a condition precedent to making such crossing; that plaintiff filed with the commission no objection to the making of such crossing; that defendant then constructed its transmission system at a great expense for a long distance up to plaintiff's right of way, and completed the construction of such crossing itself before plaintiff filed its bill; that defendant constructed this crossing under a claim of right; that no preliminary injunction was asked for by plaintiff; and that a mandatory injunction, if granted, would work great injury and loss to defendant, while the damages resulting to plaintiff would appear to be trivial in comparison. From a consideration of all of these facts, we are satisfied that this case comes within that group of cases where it has been held that a plaintiff is not entitled to a restraining order, except to the extent of "quickening the [defendant] to the performance of its duty to take proper steps to ascertain what compensation ought to be paid to the [plaintiff]:" Turnpike Road Co. v. Railway Co., 177 Pa. 585; Connellsville G. C. Co. v. B. & O. R. R. Co., 216 Pa. 309, 311; Oliver et al. v. P. V. & C. Ry. Co., 131 Pa. 408, 414; American Natural Gas Co. v. Evans, 63 Pa. Superior Ct. 162; Semple v. Railroad Co., 172 Pa. 369; Gillespie v. Railway Co., 17 Pa. Superior Ct. 569; Hay v. Valley Pike Co., 38 Pa. Superior Ct. 145.

### Decree nisi.

And now, to wit, Oct. 19, 1925, this case having been heard on final hearing and argued, it is ordered, adjudged and decreed that unless exceptions be filed sec. reg., a decree shall be entered in accordance with the conclusions of law above stated.

### Opinion on exceptions to the court's adjudication.

CUMMINS, J., Feb. 1, 1926.—Plaintiff by bill seeks to restrain defendant company from crossing, with a system of high-tension lines, its tracks and facilities at a height of at least 145 feet above and without touching at any point the physical property of the former. The facts fully appear in the court's adjudication; plaintiff's exceptions to which are now before the court in banc. By these exceptions but a single question of law is raised—whether the Act of May 21, 1921, P. L. 1057, which gives to light, heat and power companies the right of eminent domain, vests in such a company authority to cross the right of way of a street railway company, high above the facilities of and without touching the physical property of the latter, where the latter owns its right of way in fee?

The Act of May 21, 1921, gives to light, heat and power companies the power of eminent domain by a general grant, and then limits such general grant with the proviso that "streams, rivers or waters of the Commonwealth, or any of them, or the land covered thereby, or other public property, or property of a public service company, or property used for a burying-ground or place of public worship, or a dwelling-house . . . shall not be appropriated." We held in our adjudication that the properties of public service companies excepted out of the operation of the general grant were only such as were, or reasonably might become, necessary or essential to a public service company for its franchise purposes; that in the case of a street railway this included only such an interest in its right of way as it might have acquired by condemnation; that as to such right of way there had been no taking of property; and that as to plaintiff's interest in the fee in excess of such right of way, such interest could be condemned in the same manner as if owned by an individual. Counsel for plaintiff, both at final hearing and upon argument of plaintiff's exceptions, earnestly contended, first, that all property owned by a public service company, whether necessary or essential to its franchise or not, is excepted from the operation of the act; and, second, that the interest of a street railway company acquired by condemnation is such that defendant's crossing with its wires would constitute a taking of plaintiff's right of way, even if limited to that acquired by condemnation. Neither position can be sustained.

The limitation imposed by the legislature on its general grant of power must be so construed as to reasonably effect the purpose and object which it sought to attain: Swift's Appeal, 111 Pa. 516, 523; Essinger v. New Castle, 275 Pa. 408, 411. Obviously, it was not intended that the property of a public service company was to be protected against appropriation because such owners were to constitute a favored class, but because of the public or quasi-public uses for which their franchise properties are held and dedicated. Dwelling-houses, burying-grounds and places of public worship are likewise excepted from the operation of the act for the same general reason. Clearly, then, the property of a public service company to be excepted is only such as is, or may reasonably become, essential or necessary to a proper exercise of its franchise; and, hence, any other property owned by it would be subject to appropriation in the same manner and to the same extent as if owned by an individual: In re Application of Cleveland & Pittsburgh R. R. Co., 2 Pitts. Rep. 348, 352; Scranton Gas and Water Co. v. D., L. & W. R. R. Co., 225 Pa. 152, 162.

While we have no authorities construing the limitation under consideration, or at least none have been called to our attention, yet the construction which we have placed upon this act is in accord with the reasoning and construction placed upon the quite similar legislative restriction appearing in the General Railroad Act of Feb. 19, 1849, P. L. 79, 83. It is held, in construing that act, that the portion of a cemetery not adapted to use for cemetery purposes may, notwithstanding the restriction, be condemned: Ex parte New Brighton & New Castle R. R. Co., 30 Pitts. L. J. 22; Brush Run Cemetery Co. v. Montour R. R. Co., Washington County, No. 78, August Term, 1913; and see 1 Lewis on Eminent Domain (2nd ed.), 655, and Wood v. Railroad Co., 68 Ga. 539; that whether a building is exempted from appropriation as a dwelling-house shall be determined from its use: Johnson v. Railroad Co., 33 W. N. C. 184, 186; Woods v. Railroad Co., 30 W. N. C. 117; and, although the curtilage is conceded to be part of a dwelling-house (Swift's Appeal, 111 Pa. 516, 523; Damon's Appeal, 119 Pa. 287, 290), yet that only

such portion thereof is exempted from condemnation as is found to be necessary or essential to the reasonable use or enjoyment of such building as a dwelling: Swift's Appeal, 111 Pa. 516; Damon's Appeal, 119 Pa. 287; Lyle v. Railroad Co., 131 Pa. 437; Millroy v. Railroad Co., 44 Pitts. L. J. 377; Stahl v. Railroad Co., 155 Pa. 309; and see Snyder v. B. & O. R. R. Co., 210 Pa. 500; Bierly v. Railroad Co., 225 Pa. 182.

The second contention relied upon by counsel for plaintiff necessitates a consideration of the nature of a right of way acquired by a street railway company by exercise of the right of eminent domain. The interest thus acquired cannot be properly described by referring to it as any common law estate or interest in land, because at common law no such interest or estate existed. This newly-created interest in land is without a technical legal name by which it may be properly designated; hence, some confusion has resulted in attempting to properly refer to it, but the authorities as to the actual nature and extent of the interest itself seem to be in accord. In some of the cases it is referred to as being an easement, and in still others as being in the nature of a base fee, and, although it may and does have some of the characteristics of each, yet it cannot be properly said to be either: Dilts v. Railroad Co., 222 Pa. 516, 525; and see Lazarus v. Morris, 212 Pa. 128, 131. As was aptly said by Mr. Justice Simpson in the recent case of Hall v. Railroad Co., 270 Pa. 468, 471: "The vital thing, however, is not the name given to the estate acquired by the railroad company (for applying an old name to that which is *sui generis* is apt to be followed by attempts to give all the attributes usually applicable to an old title to the new creation, to which they do not belong), but what are the rights acquired by reason of the taking? and the answer is, . . . those rights which by legislation or in the nature of the thing, are necessary for the carrying on of the [corporate] business." The interest acquired by the condemnor does not include the subsoil; the title to the minerals thereunder, including the coal, oil and gas, still remain in the land owner: Lyon v. Gormley, 53 Pa. 261; Lawrence's Appeal, 78 Pa. 365; Rice v. Clear Spring Coal Co., 186 Pa. 49, 61; Hall et al. v. Railroad Co., 270 Pa. 468, 472; in fact, the condemnor does not acquire even a base fee in the surface, for such condemnor cannot sell or give away coal, gravel or dirt excavated in grading and not needed for railroad purposes: Lyon v. Gormley, 53 Pa. 261; Hall et al. v. Railroad Co., 270 Pa. 468, 472; Barclay v. Howell, 6 Peters (U. S.), 495, 512; nor does it acquire title to the waters of a spring which may be within its right of way: Dilts v. Railroad Co., 222 Pa. 516, 530; and see Cambria, etc., Ry. Co. v. Water Co., 226 Pa. 402; nor can it grant to a telephone company the right to erect poles and wires on its right of way for the latter's corporate purposes: Pittock v. C., D. & P. Tel. Co., 31 Pa. Superior Ct. 589. Again, it has been held that the interest acquired by a railroad company in its right of way does not constitute any estate in the land itself, but only the exclusive right to use such right of way for railroad purposes, and that this interest is not, therefore, subject to lien or sale under execution: Western Penna. R. R. Co. v. Johnston, 59 Pa. 290, 294. An appropriation for a street railway right of way is a servitude on the subjacent strata only so far as is necessary to support the surface for the public use for which it is taken: Penn Gas Coal Co. v. Gas Co., 131 Pa. 522; Davis v. Gas Co., 147 Pa. 130; Dilts v. Railroad Co., 222 Pa. 516, 532. A street railway company which has acquired its right of way by appropriation is entitled to the exclusive use of such right of way for street railway purposes, together with necessary support of the surface and freedom from interference with its facilities from the air.

Westside Electric Street Ry. Co. v. West Penn Power Co.

The defendant company in crossing plaintiff's right of way with its high-tension wires passed, by means of towers, high above the former's tracks and facilities and without touching at any point the physical property of said right of way. As to plaintiff's property which is necessary or essential to the exercise of its corporate franchise (such interest in its right of way as it would have acquired by condemnation), there is no taking, although such a crossing is subject to regulation by the Public Service Commission (see Smethport R. R. Co. v. Railroad Co., 203 Pa. 176); and as to plaintiff's interest in the right of way in excess of such as it would have acquired by appropriation, as to this interest defendant has a like right to appropriate as if same were still held by a private individual: Gas Co. v. Railroad Co., 225 Pa. 152, 161, 162; and to properly effect this end, which it has already ineffectually attempted, defendant is in good equity entitled to a reasonable time within which to institute a proper proceeding to condemn: Creamery and Dairy Co. v. Philadelphia, 274 Pa. 251, 255, 256.

### Decree.

And now, to wit, Feb. 1, 1926, this case came on to be heard on plaintiff's exceptions to the court's final adjudication and was argued by counsel, whereupon, upon consideration thereof and for the reasons set forth in the foregoing opinion, said exceptions are dismissed, and it is further ordered, adjudged and decreed that defendant, West Penn Power Company, is perpetually enjoined and restrained from operating or maintaining its system of transmission lines, including all equipment incident thereto, over or across the property of plaintiff, Westside Electric Street Railway Company, at the point or place described in plaintiff's bill, unless it shall, within sixty days from the date hereof, proceed to take such corporate action, and thereafter institute and prosecute with due diligence, such legal proceedings as may be necessary or proper to effect an appropriation of such right of way over plaintiff's said land as required for said crossing complained of, and a proper ascertainment and payment of compensation to plaintiff for the damages resulting therefrom; the costs of this proceeding to be paid by defendant.

From H. D. Hamilton, Washington, Pa.